## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David G. Velde,

                              Plaintiff,

                                        Civ. No. 06-2289 (RHK/RLE)
                                        **MEMORANDUM OPINION AND
                                        ORDER**

v.

Hans Reinhardt,

                              Defendant.

---

David G. Velde,

                              Plaintiff,

                                        Civ. No. 06-2305 (RHK/RLE)
                                        **MEMORANDUM OPINION AND
                                        ORDER**

v.

Howard Steinmetz,

                              Defendant.

---

David G. Velde,

                              Plaintiff,

                                        Civ. No. 06-3224 (RHK/RLE)
                                        **MEMORANDUM OPINION AND
                                        ORDER**

v.

Flywheel Grain, LLP, and Bill Hess,

                              Defendants.

---

Justin P. Weinberg, Michael S. Dove, Mary Kay Mages, Gislason & Hunter LLP, New Ulm, Minnesota, for Plaintiff.

John R. Brakke, Caren L. Stanley, Vogel Law Firm, Fargo, North Dakota, for Defendants Hans Reinhardt, Flywheel Grain, LLP, and Bill Hess.

David L. Johnson, McNair, Larson & Carlson, Ltd., Fargo, North Dakota, for Defendant Howard Steinmetz.

---

## INTRODUCTION

These three bankruptcy adversary proceedings arise out of payments made by Daniel Miller to Defendants Hans Reinhardt (Civ. No. 06-2289), Howard Steinmetz (Civ. No. 06-2305), and Flywheel Grain, LLP and Bill Hess (Civ. No. 06-3224).  Plaintiff David Velde, the Trustee of Miller's bankruptcy estate, seeks to recover the payments as preferential and fraudulent transfers under the Bankruptcy Code.   Presently before the Court are the parties' cross-motions for summary judgment in each of the three cases, which the Court treats as cross-motions for partial summary judgment.[1]  For the reasons set forth below, the Court will deny the Trustee's motions and grant in part and deny in part Defendants' cross-motions.

## BACKGROUND

Miller previously owned Danielson Grain, a crop-storage elevator in East Grand Forks, Minnesota.  In that capacity, Miller bought, sold, and stored crops.

---

[1] As discussed in more detail below (see infra at 12-13), no party has moved for summary judgment on the Trustee's fraudulent transfer claims.

On February 3, 2004, an involuntary Chapter 7 bankruptcy petition was filed against Miller in the United States Bankruptcy Court for the District of Minnesota. Miller subsequently converted the involuntary petition to a case under Chapter 11.[2] On September 29, 2004, the Bankruptcy Court converted the matter back to a Chapter 7 case and appointed Velde as the Trustee of Miller's bankruptcy estate.

The Trustee then commenced several adversary proceedings – including the three cases *sub judice* – seeking to recover the value of several checks Miller issued in the 90-day period prior to February 3, 2004. The instant Defendants demanded trials by jury and did not consent to jury trials before the Bankruptcy Court. Accordingly, the Bankruptcy Court ordered the actions transferred to this Court. See 28 U.S.C. § 157(e).

In pertinent part, the following facts in these cases appear to be undisputed and are substantially similar:

1.    The Reinhardt action: Miller issued a check for $100,332.75 in December 2003 payable to Reinhardt and to his bank in order to pay for canola that Reinhardt had previously delivered to Miller.[3] The check bounced, and Miller partially replaced it on January 9, 2004, with a $50,000 bank check. The funds for the bank check came from Miller's bank account.

_____

[2] Generally speaking, a Chapter 7 case involves the liquidation of a debtor's assets, while a Chapter 11 case involves a debtor's reorganization. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993).

[3] The bank was listed as a payee in order to extinguish its security interest in the canola Reinhardt had sold to Miller.

2.     The Steinmetz action:  Miller issued a check for $12,000 in October 2003 payable to Steinmetz and to his bank in order to pay for wheat that Steinmetz had previously delivered to Miller.  The check bounced, and Miller replaced it on November 5, 2003, with a $12,500 bank check.[4]  The funds for the bank check came from Miller's bank account.

3.     The Flywheel Grain action:  Miller issued two checks totaling approximately $300,000 in November 2003 payable to Flywheel Grain and its bank in order to pay for grain and soybeans that Flywheel Grain had previously delivered to Miller.  The checks bounced, and Miller replaced them on December 23, 2003, with two bank checks totaling $300,000.  The funds for the two banks checks came from Miller's bank account.[5]

The Trustee now moves for summary judgment in each of these cases.  He argues that Defendants must repay to the bankruptcy estate the value of the replacement checks because they constitute "avoidable" transfers under 11 U.S.C. § 547(b), the "preferences" statute.  Defendants have cross-moved for summary judgment, arguing that exceptions to the preferences statute apply and, accordingly, that the transfers are not "avoidable."

---

[4] The additional $500 apparently covered bank charges resulting from the bounced check. (Trustee's Steinmetz Mem. at 2.)

[5] These replacement checks were made payable to Bill Hess, one of Flywheel Grain's partners, rather than to Flywheel Grain.  (Trustee's Flywheel Grain Mem. at 2.)

**STANDARD OF DECISION**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

**I.      Each transfer satisfies the elements of Section 547(b)**

A bankruptcy trustee may "avoid" a transfer made to or on behalf of a creditor, on or within 90 days of the filing of a bankruptcy petition, if (1) the debtor was insolvent on the date of the transfer, (2) the transfer was for an antecedent debt, and (3) the transfer allowed the creditor to receive more than it would have received in a Chapter 7 liquidation.  11 U.S.C. § 547(b); Peltz v. Edward C. Vancil, Inc. (In re Bridge Info. Sys., Inc.), ___ F.3d ___,

2007 WL 57597, at *3 (8th Cir. Jan. 10, 2007).  An "avoided" transfer may be recovered by the trustee.  See 11 U.S.C. § 550(a).

Here, the Trustee has established all of the prerequisites to avoidability with respect to the transfers at issue.  First, all of the transfers clearly occurred within 90 days of February 3, 2004, when the involuntary bankruptcy petition was filed against Miller, and all were on account of antecedent debts[6] owed to creditors, namely, Defendants.[7]  Second, a debtor is presumed to have been insolvent during the 90-day period immediately prior to the filing of a bankruptcy petition, see 11 U.S.C. § 547(f), and Defendants have proffered no evidence to rebut that presumption here.  Third, it is "generally well settled that unless creditors would receive a 100% payout, any unsecured creditor who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation."  Hoffinger Indus., Inc. v. Bunch (In re Hoffinger Indus., Inc.), 313 B.R. 812, 827 (Bankr. E.D. Ark. 2004) (internal quotation marks and citations

---

[6] An "antecedent debt" is a debt "incurred before the allegedly preferential transfer."  In re Bridge Info. Sys., ___ F.3d ___, 2007 WL 57597, at *3.  A debt is "incurred" on "the date upon which the debtor first becomes legally bound to pay."  Id.  Here, Miller became bound to pay on the dates that the grain or other commodities were delivered by Defendants, all of which occurred before the replacement checks were issued.

[7] Defendant Hess argues that he was not a creditor of Miller and that he is entitled to summary judgment on this basis.  (Flywheel Grain Mem. at 6-8.)  This argument is meritless.  A transfer cannot be shielded from the Trustee's avoidance powers simply because the transferee was not a creditor of the debtor.  Indeed, in order for a transfer to qualify as a preference under Section 547, the transfer must have been made "to or for the benefit of a creditor."  11 U.S.C. § 547(b)(1) (emphasis added).  The fact that Hess was not a creditor of Miller is therefore of no moment, because there is no dispute that Hess received the replacement check for the benefit of Flywheel Grain (see Defendants' Answer to Amended Complaint ¶ VIII (civ. no. 06-3224)), admittedly one of Miller's creditors (see id. ¶ VII).

-6-

omitted); accord Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.), 930

F.2d 458, 465 (6th Cir. 1991); Zachman Homes, Inc. v. Oredson (In re Zachman Homes,

Inc.), 40 B.R. 171, 173 (Bankr. D. Minn. 1984).  Here, the Trustee notes that when Miller

converted the involuntary Chapter 7 bankruptcy petition into a Chapter 11 case, he

submitted documents stating that he had over $5 million in liabilities and less than $3

million in assets, thereby clearly indicating that Miller's creditors would not receive a

100% payout.  (See, e.g., Trustee's Reinhardt Mem. at 5.)  Thus, the Trustee has established

that the transfers allowed Defendants to receive more than they would have received in a

Chapter 7 liquidation, and Defendants do not argue otherwise.

Accordingly, the Trustee has established each of the elements to avoidability set

forth in 11 U.S.C. § 547(b) with respect to the transfers at issue.

## II.    The "contemporaneous-exchange-for-new-value exception" applies

Although they largely concede that the transfers at issue satisfy the requirements for

avoidability under Section 547(b), Defendants argue that the "contemporaneous-exchange-

for-new-value exception" applies and that this exception precludes the Trustee from

avoiding the transfers.  The contemporaneous-exchange-for-new-value exception is

codified in 11 U.S.C. § 547(c), which states in pertinent part:

(c)    The Trustee may not avoid under this section a transfer –

(1)    to the extent that such transfer was –

(A)    intended by the debtor and the creditor to or for whose
benefit such transfer was made to be a contemporaneous
exchange for new value given to the debtor; and

-7-

(B)      in fact a substantially contemporaneous exchange.

Defendants argue that this exception applies here because the commodities they sold to

Miller were subject to security interests held by their banks.  For this reason, the checks

Miller issued to pay for the commodities were made payable <u>both</u> to Defendants and to the

banks, in order to extinguish the banks' security interests.[8]  According to Defendants, this

renders each of the checks a contemporaneous exchange for new value, with the "new

value" being the release of the banks' security interests in the commodities.  (<u>See</u>

Reinhardt Mem. at 6-11; Steinmetz Mem. at 4-9; Flywheel Grain Mem. at 9-14.)

Defendants are correct that a third-party's release of its security interest in items

purchased by a debtor may constitute a contemporaneous exchange for new value.  Indeed,

this Court previously reached that conclusion in a separate adversary proceeding in Miller's

bankruptcy case.  <u>See</u> <u>Velde v. Nikle Farms, Inc.</u>, No. 05-795, 2006 WL 1228850, at *9 (D.

Minn. May 5, 2006) (Kyle, J.).  The Trustee argues that <u>Nikle Farms</u> is distinguishable,

however, because that case did not involve bounced checks.  According to the Trustee,

because the checks originally issued to pay for Defendants' commodities bounced, the

nature of the transactions differs from that in <u>Nikle Farms</u> and renders the

---

[8] The replacement check issued to Reinhardt omitted his bank as a payee.  According to Miller, that omission "was a simple oversight." (Miller Aff. ¶¶ 4-5.)  Regardless, there is no dispute that Reinhardt endorsed the check and delivered it to his bank in order to extinguish the bank's lien on the crops he had sold to Miller.  (<u>See</u> Reinhardt Mem. at 4; Reinhardt Aff. ¶ 7.)  Nor is there any dispute that the replacement checks were intended to extinguish, and did extinguish, the bank's lien. (<u>See</u> Reinhardt Mem. at 2; Reinhardt Aff. ¶ 7.)

contemporaneous-exchange-for-new-value exception inapplicable.  (See, e.g., Trustee's Flywheel Grain Mem. at 11.)[9]  Although the Court agrees that Nikle Farms is not controlling, it concludes that the contemporaneous-exchange-for-new-value exception nevertheless applies.

The Trustee first argues that each bank's release of its lien upon receipt of the replacement check(s) cannot have been "new value" as a matter of law.  (See, e.g., Trustee's Flywheel Grain Reply Mem. at 6.)  In support of this argument, the Trustee points to the Bankruptcy Code's definition of "new value," which expressly excludes "an obligation substituted for an existing obligation."  (See id. (citing 11 U.S.C. § 547(a)(2)).)  But the replacement checks issued by Miller – which are what the Trustee argues were the "obligation[s] substituted for . . . existing obligation[s]" – cannot have been "new value," because that term (in the context of the contemporaneous-exchange-for-new-value exception) refers to the property or other benefit *received* by the debtor, not the property *transferred by* the debtor.  See 11 U.S.C. § 547(c)(1)(A) (trustee cannot avoid contemporaneous exchange "for new value *given to the debtor*") (emphasis added).  In other words, the Trustee appears to have confused the replacement checks Miller issued –

---

[9] Several Defendants argue that Nikle Farms collaterally estops the Trustee from challenging the applicability of the contemporaneous-exchange-for-new-value exception.  (See Reinhardt Mem. at 14-15; Flywheel Grain Mem. at 17-18.)  The issue of whether the exception applies *in the context of a bounced check*, however, did not arise in Nikle Farms.  Accordingly, collateral estoppel does not preclude the Trustee from arguing that the exception is inapplicable here.  See Canady v. Allstate Ins. Co., 282 F.3d 1005, 1016 (8th Cir. 2002) (collateral estoppel does not apply when "the issue sought to be precluded is [not] identical to the issue previously decided").

the "transfers" the Trustee now seeks to recover – with the "new value" Miller received, *viz.*, the release of the banks' security interests.

The Trustee next argues that a "bright-line rule" exists in a bounced-check situation: "[W]hen a bounced check is given by the debtor in exchange for new value provided by a creditor, any subsequent payment to make good the bad check is not a contemporaneous exchange for new value."  (See, e.g., Trustee's Steinmetz Mem. at 11 (quoting Morrison v. Champion Credit Corp. (In re Barefoot), 952 F.2d 795, 800 (4th Cir. 1991)).)  At first glance, this argument appears to have merit.  Upon closer inspection, however, it becomes clear that the Trustee's argument must fail under the facts of this case.

In Morrison, the debtor received "new value" – title certificates for mobile homes – on the date upon which the original, bounced checks were received by the creditor. Accordingly, the subsequent replacement of those bounced checks with wire transfers could not have been "contemporaneous" with the "new value" the debtor had received.  See Morrison, 952 F.2d at 800.  In ruling that the creditor could not invoke the contemporaneous-exchange-for-new-value exception, the Morrison court stated:

> The exception for a contemporaneous exchange does not ordinarily apply to credit transactions, and the dishonor of a check inevitably creates an antecedent debt owed by the debtor which any subsequent payments to make good the check, no matter how quickly made, would be satisfying.  Unlike the case of an honored check or a cash payment where there is only one exchange between the debtor and creditor, the case of a dishonored check involves multiple exchanges and thus assumes the character of a credit transaction: the debtor gives the bad check, which in this context is the functional equivalent of a promissory note, followed by one or more payments to make good the check.  The dishonor of a check, therefore, defeats the actual achievement of a contemporaneous exchange for new value, and we conclude that any payments to make good a

-10-

> bounced check cannot qualify as transfers to which the contemporaneous exchange exception applies.

Id.  Key to the court's holding, therefore, was the lack of contemporaneousness between the replacement of the bounced checks and the value received by the bankruptcy estate in exchange therefor; in the absence of such contemporaneousness, the exception simply did not apply.  Id. at 800 & n.*.  The other cases upon which the Trustee relies all reached the same result.[10]

The facts of this case stand in stark contrast to the cases cited by the Trustee.  Here, Miller *did* receive "new value" at the time he issued the replacement checks because those checks – and only those checks – extinguished the banks' liens on the commodities Miller had purchased.  Indeed, under the Food Security Act, the release of the banks' security interests occurred only when Miller made "payments" for the commodities he had received.  See 7 U.S.C. § 1631(e)(3)(B).  The bounced checks Miller issued to Defendants cannot have been "payments" under the Act; to hold otherwise would "giv[e] operative legal significance to bad checks," which would "undermine . . .  Congress's purposes for § 547(b)."  Morrison, 952 F.2d at 798; accord In re Stewart, 274 B.R. at 514.  Rather, it was only after Miller issued the replacement checks that the banks' security interests were released, and it was those releases that constituted the "new value" received by him.  Thus, the necessary contemporaneousness between the transfers (the replacement checks) and the new value (the banks' releases of their

---

[10] See Endo Steel, Inc. v. Janas (In re JWJ Contracting Co.), 371 F.3d 1079, 1082 (9th Cir. 2004); Stewart v. Barry County Livestock Auction, Inc. (In re Stewart), 274 B.R. 503, 512 (Bankr. W.D. Ark. 2002), aff'd, 282 B.R. 871 (B.A.P. 8th Cir. 2003); Goger v. Cudahy Foods Co. (In re Standard Food Servs., Inc.), 723 F.2d 820, 821 (11th Cir. 1984).

liens) exists here.    The cases cited by the Trustee, therefore, are inapposite, and the contemporaneous-exchange-for-new-value exception applies to the transfers at issue.[11]

For all these reasons, the Court concludes that Section 547(c)(1)'s contemporaneous-exchange-for-new-value exception applies and that the Trustee cannot avoid the transfers under Section 547 of the Bankruptcy Code.[12]

## III.    The remaining claims

Having concluded that the transfers at issue are not avoidable under Section 547, the Court pauses briefly to discuss its holding in the context of the claims pled by the Trustee.

Each Complaint in these cases asserts four claims against the Defendant: that the transfer at issue is avoidable under 11 U.S.C. § 547 (Count I) and § 548 (Count II); that, because the transfer is avoidable, it is recoverable by the Trustee under 11 U.S.C. § 550 (Count III); and that, pursuant to 11 U.S.C. § 502(d), any claim by the Defendant against Miller's bankruptcy estate must be disallowed until the avoidable transfer is repaid (Count IV).    As set forth above, the Court concludes that the transfers at issue are not avoidable preferences under

---

[11] The Trustee directs the Court's attention to a recent decision by the Minnesota Bankruptcy Court in another adversary proceeding in Miller's bankruptcy case.   There, the court considered, but rejected, the application of the contemporaneous-exchange-for-new-value exception on nearly identical facts to this case.   See Velde v. Kirsch (In re Miller), No. 06-6086, 2006 WL 2623882, at *2-4 (Bankr. D. Minn. Aug. 29, 2006).   As the Trustee conceded at oral argument, however, Kirsch is not binding on this Court.   Moreover, Kirsch contains no discussion of the Food Security Act or the fact that the "new value" at issue here was received by Miller only in exchange for the replacement checks.   Accordingly, the Court declines to follow Kirsch.

[12] As a result, it is unnecessary to consider the applicability of the "forward-contract exception" in Section 546(e) of the Bankruptcy Code, which several Defendants raise.

-12-

Section 547 of the Bankruptcy Code.    Accordingly, each Defendant is entitled to summary judgment on Count I of the Complaint.[13]

However, this does not mean that Defendants also are entitled to summary judgment on Counts II, III, and IV.    Indeed, while the parties purport to seek summary judgment on all of the claims in the Complaints, no party has sought summary judgment on – or even mentioned – the Trustee's claims under Section 548 of the Bankruptcy Code (Count II), the "fraudulent transfers" section.    And, if the Trustee were to succeed on his claims under Section 548, his claims under Section 550 (Count III) and Section 502 (Count IV) also would be successful. Accordingly, the Court will grant summary judgment in Defendants' favor only on Count I of the Complaints and in all other respects deny the Motions.[14]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** as follows:

1.    In Case No. 06-2289, <u>Velde v. Reinhardt</u>, Plaintiff's Motion for Summary Judgment (Doc. No. 7) is **DENIED**.  Defendant's Cross-Motion for Summary Judgment

---

[13] This includes Defendant Flywheel Grain, which "cross" moved for summary judgment even though the Trustee did not seek summary judgment against it.

[14] The Court notes that the avoidance exceptions raised by Defendants in connection with the instant Motions do not apply to the Trustee's claims under Section 548.  The contemporaneous-exchange-for-new-value exception is expressly limited to claims under Section 547(b).  <u>See</u> 11 U.S.C. § 547(c) ("The trustee may not avoid *under this section* a transfer . . . .") (emphasis added).  And, while the "forward-contract exception" in Section 546(e) applies to claims under Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee has pleaded claims under Section 548(a)(1)(A), a different sub-section of Section 548.  (<u>See</u> Steinmetz Compl. ¶ 16; Reinhardt Compl. ¶ 16; Flywheel Grain Am. Compl. ¶ 16.)

(Doc. No. 19) is **GRANTED IN PART** and **DENIED IN PART**, and Count I of Plaintiff's

Complaint is **DISMISSED WITH PREJUDICE**;

      2.      In Case No. 06-2305, <u>Velde v. Steinmetz</u>, Plaintiff's Motion for Summary

Judgment (Doc. No. 10) is **DENIED**.  Defendant's Cross-Motion for Summary Judgment

(Doc. No. 22) is **GRANTED IN PART** and **DENIED IN PART**, and Count I of Plaintiff's

Complaint is **DISMISSED WITH PREJUDICE**; and

      3.      In Case No. 06-3224, <u>Velde v. Flywheel Grain and Bill Hess</u>, Plaintiff's

Motion for Summary Judgment (Doc. No. 4) is **DENIED**.  Defendants' Cross-Motion for

Summary Judgment (Doc. No. 20) is **GRANTED IN PART** and **DENIED IN PART**,

and Count I of Plaintiff's Amended Complaint[15] is **DISMISSED WITH PREJUDICE**.

Dated: January __25__, 2007                    s/Richard H. Kyle
                                               RICHARD H. KYLE
                                               United States District Judge

---

[15] The Amended Complaint, which was filed in the Bankruptcy Court before this action was transferred to this Court, is appended to the original Complaint as part of Docket Entry No. 1.